# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# CHARLOTTE DIVISION
# CIVIL NO. 5:08CV138-RLV-DSC

| | |
|---|---|
| JACKIE R. MARTINEZ,<br>    Plaintiff, | )<br>)<br>) |
| vs. | )   **MEMORANDUM AND RECOMMENDATION** |
| | ) |
| MICHAEL J. ASTRUE,<br>Commissioner of Social<br>Security Administration,<br>    Defendant. | )<br>)<br>)<br>)<br>) |

**THIS MATTER** is before the Court on the Plaintiff's "Motion for Judgment on the Pleadings" (document #9) and "Memorandum ... in Support ..." (document #9-4), both filed June 2, 2009; and the Defendant's "Motion for Summary Judgment" (document #10) and "Memorandum in Support of the Commissioner's Decision" (document #11), both filed August 4, 2009. This case has been referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B), and these motions are now ripe for disposition.

Having considered the written arguments, administrative record, and applicable authority, the undersigned will respectfully recommend that Plaintiff's Motion for Judgement on the Pleadings be <u>denied</u>; that Defendant's Motion for Summary Judgment be <u>granted</u>; and that the Commissioner's decision be <u>affirmed</u>.

## I. PROCEDURAL HISTORY

On December 29, 2004, Plaintiff filed an application for a period of disability and Social Security disability benefits ("DIB"), alleging she was unable to work as of September 23, 2003 due to a "herniated disc, lumbar spine impairment, depression, brittle diabetes impairment, arthritis in

lower back." (Tr. 77.) Plaintiff's claim was denied initially and upon reconsideration.

Plaintiff filed a timely Request for Hearing, and on April 18, 2008 a hearing was held before an Administrative Law Judge ("ALJ"). In a decision dated May 30, 2008, the ALJ denied Plaintiff's claim, finding that Plaintiff had not engaged in substantial gainful activity through her date last insured, March 31, 2005;[1] that Plaintiff suffered from chronic back pain due to degenerative disc disease at the L4-5 and L5-S1 levels with facet joint arthropathy, major depressive disorder, and anxiety, which were severe impairments within the meaning of the regulations, but did not meet or equal any listing in 20 C.F.R. Pt. 404, Subpt. P, App. 1; that Plaintiff retained the Residual Functional Capacity ("RFC")[2] to perform work at the light[3] exertional level with alternating sitting and standing every 45 minutes, no more than frequent climbing, occasional balancing, stooping/bending, kneeling, crouching/squatting, and the avoidance of hazards (i.e. machinery and heights); with respect to Plaintiff's mental RFC, the ALJ found that Plaintiff remained capable of understanding, remembering and carrying out simple instructions, making simple work-related

---

[1] A DIB claimant must prove disability prior to his or her date last insured. See Johnson v. Barnhart, 434 F.3d 650, 655-656 (4th Cir. 2005).

[2] The Social Security Regulations define "residual functional capacity" as "what [a claimant] can still do despite his limitations." 20 C.F.R. § 404.1545(a). The Commissioner is required to "first assess the nature and extent of [the claimant's] physical limitations and then determine [the claimant's] residual functional capacity for work activity on a regular and continuing basis." 20 C.F.R. § 404.1545(b).

[3] "Light" work is defined in 20 C.F.R. § 404.1567(b) as follows:

> Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

decisions, responding appropriately to supervision, co-workers, the general public and usual work situations, and handling changes in a routine work setting; and that this RFC was insufficient to permit Plaintiff to perform her past relevant work.

The ALJ then correctly shifted the burden to Defendant to show the existence of other jobs in the national economy which Plaintiff could have performed. The ALJ concluded that the Vocational Expert's ("V.E.") testimony, which was based on a hypothetical that factored in the above limitations, provided substantial evidence that there were a significant number of jobs in the national economy that the Plaintiff could perform, including work as a packager, cashier, and inspector, and that, therefore, she was not disabled.

By notice dated September 22, 2008, the Appeals Council denied Plaintiff's request for further administrative review.

Plaintiff filed the present action on November 21, 2008. On appeal, Plaintiff argues that the ALJ failed to properly evaluate the opinion of Plaintiff's treating family practice physician, Mary Digel, M.D., and the Plaintiff's subjective complaints of pain, which amount to a challenge to the ALJ's determination concerning her RFC.[4] See Plaintiff's "Memorandum ... in Support ..." at 17-23 (document #9-4). The parties' cross dispositive motions are ripe for disposition.

## II. STANDARD OF REVIEW

The Social Security Act, 42 U.S.C. § 405(g) and § 1383(c)(3), limits this Court's review of a final decision of the Commissioner to: (1) whether substantial evidence supports the Commissioner's decision, Richardson v. Perales, 402 U.S. 389, 390, 401 (1971); and (2) whether

---

[4]Plaintiff also assigned error to the hypothetical that the ALJ submitted to the Vocational Expert ("VE"), but that is merely a restatement of Plaintiff's primary challenge to her RFC.

3

the Commissioner applied the correct legal standards. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990); see also Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1992) (per curiam). The District Court does not review a final decision of the Commissioner de novo. Smith v. Schweiker, 795 F.2d 343, 345 (4th Cir. 1986); King v. Califano, 599 F.2d 597, 599 (4th Cir. 1979); Blalock v. Richardson, 483 F.2d 773, 775 (4th Cir. 1972).

As the Social Security Act provides, "[t]he findings of the [Commissioner] as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). In Smith v. Heckler, 782 F.2d 1176, 1179 (4th Cir. 1986), quoting Richardson v. Perales, 402 U.S. 389, 401 (1971), the Fourth Circuit defined "substantial evidence" thus:

> Substantial evidence has been defined as being "more than a scintilla and do[ing] more than creat[ing] a suspicion of the existence of a fact to be established. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."

See also Seacrist v. Weinberger, 538 F.2d 1054, 1056-57 (4th Cir. 1976) ("We note that it is the responsibility of the [Commissioner] and not the courts to reconcile inconsistencies in the medical evidence").

The Fourth Circuit has long emphasized that it is not for a reviewing court to weigh the evidence again, nor to substitute its judgment for that of the Commissioner, assuming the Commissioner's final decision is supported by substantial evidence. Hays v. Sullivan, 907 F.2d at 1456 (4th Cir. 1990); see also Smith v. Schweiker, 795 F.2d at 345; and Blalock v. Richardson, 483 F.2d at 775. Indeed, this is true even if the reviewing court disagrees with the outcome – so long as there is "substantial evidence" in the record to support the final decision below. Lester v. Schweiker, 683 F.2d 838, 841 (4th Cir. 1982).

4

### III. DISCUSSION OF CLAIM

The question before the ALJ was whether the Plaintiff became "disabled" as that term of art is defined for Social Security purposes at any time prior her date last insured, March 31, 2005.[5] It is not enough for a claimant to show that she suffered from severe medical conditions or impairments which later became disabling. The subject medical conditions must have become disabling prior to the date last insured. Harrah v. Richardson, 446 F.2d 1, 2 (4th Cir. 1971) (no "manifest error in the record of the prior administrative proceedings" where Plaintiff's conditions did not become disabling until after the expiration of his insured status).

With respect to Plaintiff's back impairment, the record shows that on March 31, 2002, she was seen by Dr. William R. Brown for back and leg pain (Tr. 173-174). Plaintiff stated that she had weakness in both legs and numbness in the right leg (Tr. 173). Upon examination, Plaintiff had no trochanteric tenderness, a positive straight leg raise test on the right, and a negative test on the left (Tr. 173). Plaintiff's strength, heel and toe walking, and toe standing were "normal" (Tr. 173).

On September 4, 2002, Plaintiff was diagnosed with central protrusions at L4-5 and L5-S1 and facet joint arthropathy pursuant to an MRI performed by the High Chatham Memorial Hospital (Tr. 138). On September 30, 2002, and again on March 31, 2003, Plaintiff underwent radio-frequency facet rhizotomy and epidural steroid injection therapy for her lumbar facet syndrome (Tr. 143-145, 153-155). At the time of her therapy, Dr. Brown performed a physical examination which revealed that Plaintiff's strength, heel and toe walking, and toe standing were "normal" (Tr. 145,

---

[5]Under the Social Security Act, 42 U.S.C. § 301, et seq., the term "disability" is defined as an:
inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . . .
Pass v. Chater, 65 F. 3d 1200, 1203 (4th Cir. 1995).

155).

On September 10, 2002, Plaintiff saw Dr. Brown with complaints of worsening back pain and continual pain in her right leg. Plaintiff again displayed no trochanteric tenderness, and normal strength, heel and toe walking, and toe standing (Tr. 175). Plaintiff again had a positive straight leg raise test on the right and a negative test on the left (Tr. 175).

On January 29, 2003, Plaintiff went to the Alleghany Memorial Hospital for "exacerbation of chronic low back pain" (Tr. 148-150). Plaintiff's physical examination revealed no tenderness, edema, ecchymosis, or spasms in the lower back (Tr. 150).

On March 5, 2003, Plaintiff saw Dr. Brown for back pain, following her lumbar radiofrequency facet rhizotomy therapy (Tr. 174). Plaintiff admitted that her back and leg pain were better, although still present (Tr. 174).

On July 18, 2003, Plaintiff stated that her back was troubling her greatly and that even Percocet did not relieve her pain (Tr. 270). As a result, Dr. Mary Digel prescribed Duragesic patches to treat her pain (Tr. 270). On August 20, 2003, Plaintiff stated that she was "pleased with her Duragesic patches, which ha[d] relieved her pain markedly" (Tr. 270). Dr. Digel noted that she was "proud of [Plaintiff's] response to Duragesic" and that she planned to continue Plaintiff on the medication (Tr. 270).

Plaintiff continued to note the positive effects of Duragesic in treating her back pain. On September 4, 2003, Plaintiff admitted that she "like[d] the Duragesic" and that it was "working very well for her back pain" (Tr. 269). On September 19, 2003, Plaintiff stated that her "trigger point injection also did nicely" in relieving her back pain (Tr. 269). On November 20, 2003, Plaintiff again admitted that her Duragesic patches really did "a good job relieving [her] pain" and that her

6

chronic back pain was "adequately controlled with Duragesic" (Tr. 267).

On December 5, 2003, upon physical examination, Dr. Digel objectively noted that Plaintiff's strength, sensation to pinprick, and gait were "normal" and that her reflexes were "intact" (Tr. 266). On January 19, 2004, Plaintiff relayed to Dr. Digel that she had been seen by a Dr. Mascenik who did "nerve conduction studies that were not suggestive of peripheral neuropathy" (Tr. 264). At that time, Dr. Digel assessed that Plaintiff's "chronic pain [was] fairly stable on Duragesic" (Tr. 264).

On March 19, 2004, Plaintiff admitted that she had "no point tenderness" and was happy, energetic, and hopeful (Tr. 261). In March and April 2004, Plaintiff continued with therapy at Alleghany Memorial Hospital and made consistent progress (Tr. 196-197). Plaintiff admitted to feeling relaxed and pain free with treatment (Tr. 196). Her treatment notes also reflected that she was doing very well and had no complaints of pain, that she had more energy and was more functional at home, and that she was not nearly as tight as before (Tr. 196). Plaintiff's also stated that she "didn't have pain" with treatment, and had a "decline in pain overall" (Tr. 197). Plaintiff further admitted that she had reduced the dosage of her pain patches and that the pain in her lower back and neck [had] resolved with treatment" (Tr. 197). During that time, Plaintiff also reported a decrease in the severity of her pain with treatment from 7/10 to 3/10 on a 0 to 10 scale (Tr. 197).

On April 9, 2004, Dr. H.L. Johnson recommended that Plaintiff take a water walking class for swelling and aching in her legs (Tr. 260). On April 19, 2004, Dr. Digel noted that Plaintiff was "benefitting" from the water therapy and "[felt] tired, but good today after a session" (Tr. 260). Dr. Digel also noted that Plaintiff was "joking and laughing today, really [was] moving very well after her session" (Tr. 260). Dr. Digel noted that Plaintiff should "continue with her therapy, which I think is doing fine" (Tr. 260).

7

On May 2, 2004, Plaintiff received trigger point massage and aquatic therapy at Alleghany Memorial Hospital (Tr. 194). Under the "objective" portion of Plaintiff's discharge summary, it was noted that she was moving better, was more mobile, and that her pain was under control (Tr. 194).

On July 14, 2004, Dr. Digel noted that Plaintiff "actually look[ed] very good" (Tr. 258). Thereafter, on October 21, 2004, Dr. Digel noted that Plaintiff's "[c]hronic back pain [was] doing well on Duragesic therapy" and that Plaintiff continued to "look good and [was] still getting adequate relief of her pain [with] the patches" (Tr. 257).

On February 25, 2005, approximately five weeks before her date last insured for Social Security purposes, Plaintiff saw Dr. Digel for a review of her chronic back pain (Tr. 254). Plaintiff appeared to be in no acute distress and admitted that her pain was reasonably controlled, although it was not "totally eradicated" (Tr. 254).

On March 25, 2005, one week prior to Plaintiff's date last insured, Dr. Digel again noted that Plaintiff's back pain was "fairly well controlled" (Tr. 254). On March 30, 2005, Dr. Joseph D. Lee performed an MRI of Plaintiff's lumbar spine (Tr. 209). Results revealed "no acute fracture or misalignment. No significant osteoarthritis. Minimal narrowing intervertebral disc space of L4-5 and L5-S1" (Tr. 209).

On March 30, 2005, Dr. John Kovacich conducted a consultative physical examination (Tr. 207-209). Dr. Kovacich found that Plaintiff's joints had no effusion but he found "some" tender points involving Plaintiff's back (Tr. 207). He observed that Plaintiff was capable of heel and toe walking, and that there was some "mild" limitation of active motion involving her thoracolumbar area (Tr. 207). Dr. Kovacich noted that Plaintiff did not use an assistive device and that her straight leg raising tests were negative both sitting and lying down (Tr. 207).

On March 31, 2005, Dr. Camille Warren reviewed the medical evidence of record and completed a physical RFC assessment (Tr. 228-235). Dr. Warren concluded that Plaintiff remained capable of performing medium work (Tr. 235).[1]

On May 31, 2005, Dr. Digel provided a letter summarizing her treatment of Plaintiff and her belief as to the restrictions on Plaintiff's ability to work (Tr. 249-250). Dr. Digel stated that "[o]n a scale of 0 to 10, a typical pain level for [Plaintiff] [was] 8. Fatigue would be about 5 out of 10. With transdermal Fentanyl patches, we have achieved partial relief of the pain, enough to allow her to function at her normal activities of daily living" (Tr. 249).

On August 24, 2005, Dr. Alan B. Cohen reviewed the evidence of record and completed a physical RFC assessment (Tr. 330-332). Dr. Cohen affirmed Dr. Warren's physical RFC assessment, which limited Plaintiff to medium work (Tr. 332).

On May 30, 2006, more than a year after her date last insured, Dr. Digel completed a lumbar spine impairment questionnaire relative to Plaintiff's condition (Tr. 347-352A), as well as a narrative summary of her findings (Tr. 353-355). Dr. Digel noted that while Plaintiff's pain had not been "completely" relieved, they had achieved "pretty good results" with medication without unacceptable side effects (Tr. 349). However, Dr. Digel went on to opine that nevertheless Plaintiff was limited to sitting 4 hours and standing/walking 2 hours in an 8-hour day with a sit-stand option, and that she should avoid lifting anything in excess of 10 pounds occasionally with no repetitive reaching or lifting, pushing, pulling, kneeling, bending, or stooping

With respect to Plaintiff's diabetes, the record references only a few instances in which

---

[1]Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds. If someone can do medium work, he or she can also do sedentary and light work. 20 C.F.R. § 404.1567.

Plaintiff was treated for her condition. On March 9, 2002, Plaintiff underwent a blood sugar test after drinking "some sips of soda" (Tr. 280). Plaintiff was reassured that her blood sugar was "normal," though she was encouraged to pursue weight loss and a prudent diet (Tr. 280).

On May 31, 2002, Plaintiff was apparently first diagnosed with diabetes mellitus (Tr. 278). Dr. Jack Cahn suggested aggressive control of her condition with Glucophage, which he deemed to be the drug of choice given Plaintiff's obesity (Tr. 278).

On March 25, 2005, Plaintiff's treatment notes indicate that she had "slept so much that she forgot to eat and her blood sugar dropped, which caused some jerking" (Tr. 254). Plaintiff's treatment notes indicated that her symptoms resolved shortly thereafter (Tr. 254).

Concerning the Plaintiff's mental and emotional impairments, on February 21, 2005, she was seen by Dr. Griffin at the North Carolina Disability Determination Services (DDS) for a psychiatric evaluation (Tr. 202-206). Dr. Griffin noted that Plaintiff arrived early and was helpful and polite (Tr. 202). Plaintiff admitted to "playing on the computer" and occasionally cooking for her children (Tr. 204). Plaintiff provided acceptable responses to cognitive questions, her intellectual functioning was assessed as "normal," and her ability to sustain concentration and attention was "adequate" (Tr. 205). Dr. Griffin concluded that Plaintiff was "guarded" and suggested that she return to Dr. Digel for an increase in her Lexapro medication (Tr. 206). Dr. Griffin further found Plaintiff capable of handling benefits in her best interest (Tr. 206).

On April 22, 2005, Dr. Lori Brandon completed a psychiatric review technique form (PRTF) relative to Plaintiff's mental condition (Tr. 214-227). Dr. Brandon concluded that while Plaintiff possessed moderate limitations in several functional areas (Tr. 224), she remained capable of performing simple, routine, repetitive tasks in a low stress setting with minimal social demands (Tr.

226). This opinion was subsequently affirmed by Dr. Brian Grover on September 9, 2005 (Tr. 333-346).

On May 31, 2006, Dr. Digel provided Plaintiff's attorney with a summary of Plaintiff's physical and mental functioning (Tr. 354-355). Consistent with other substantial evidence of record, Dr. Digel stated that Plaintiff's depression was "reasonably well controlled now and [did] not contribute substantially to her functional limitations at this time" (Tr. 355).

With regard to Plaintiff's first assignment of error, she contends that the ALJ erred in giving minimal weight, rather than controlling weight, to the opinion of Dr. Digel regarding her physical RFC. The Fourth Circuit has established that a treating physician's opinion on the issue of disability need not be afforded controlling weight. Hunter v. Sullivan, 993 F.2d 31, 35 (4th Cir. 1992). A treating physician's opinion on the nature and severity of the alleged impairment is entitled to controlling weight only if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in the record. See 20 C.F.R. §§ 404.1527(d)(2) (2002); and Mastro v. Apfel, 270 F.3d 171, 178 (4th Cir. 2001). Therefore, "[b]y negative implication, if a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight." Mastro, 270 F.3d. at 178, citing Craig v. Chater, 76 F.3d 585, 590 (4th Cir. 1996).

Dr. Digel's opinion that Plaintiff was limited to sitting 4 hours and standing/walking 2 hours in an 8-hour day with a sit-stand option, and that she should avoid lifting anything in excess of 10 pounds occasionally with no repetitive reaching or lifting, pushing, pulling, kneeling, bending, or stooping (Tr. 247-255) was not entitled to controlling weight since it was inconsistent with both her own treatment notes as well as other substantial evidence of record. As the ALJ properly concluded,

11

substantial evidence suggests that Plaintiff's pain was well controlled and that she could perform light work within the parameters of her RFC, as discussed above.

Indeed, contrary to her opinion stated more than a year after Plaintiff's date last insured, Dr. Digel repeatedly noted in the course of treating Plaintiff that she appeared to be in "no acute distress" (Tr. 254, 259, 261, 263, 271, 280) and that her pain did not preclude her ability to "function at her normal activities of daily living" (Tr. 354). See Guilliams v. Barnhart, 393 F.3d 798, 802 (8th Cir. 2005) (ALJ reasonably discounted complaints of pain where "[d]uring several examinations by a treating physician . . . [claimant] appeared to be in no significant distress"). Moreover, Dr. Digel's underlying treatment notes continually indicated that Plaintiff's pain was relieved, and well controlled by medication. (Tr. 254-255, 257-258, 260, 264, 267, 269-270, 277). See Gross v. Heckler, 785 F.2d 1163, 1166 (4th Cir. 1986) ("[i]f a symptom can be reasonably controlled by medication or treatment, it is not disabling"); and Purdham v. Celebrezze, 349 F.2d 828, 830 (4th Cir. 1965) (finding that symptoms that can be controlled by medication are not disabling).

Additionally, Dr. Digel's opinion was contradicted by other substantial evidence, discussed above. For example, Dr. Kovacich, who performed Plaintiff's consultative physical examination, found that Plaintiff's range of motion was relatively normal, with only minimal limitations in Plaintiff's thoracolumbar spine (Tr. 208). Despite "some" tenderness in the lumbosacral area where Plaintiff had her radio ablation therapy, Plaintiff could perform heel and toe walking, manipulated large and small objects, did not require assistive devices, and had a negative straight leg test in both legs (Tr. 207).

In his decision, the ALJ also referenced the fact that Dr. Digel's opinion regarding Plaintiff's physical RFC was primarily based on Plaintiff's subjective complaints (Tr. 24). See Mastro v.

Apfel, 270 F.3d 171, 177-178 (4th Cir. 2001) (affirming disregard of treating physician's opinion where it "was based largely upon the claimant's self-reported symptoms" and was not supported by medical evidence); see also Arruda v. Barnhart, 314 F. Supp. 2d 52, 76 n. 24 (D. Mass. 2004) (noting that a physician's assessment of claimant's pain as moderate rather than severe supported ALJ's assessment of plaintiff's credibility).

Given the marked inconsistencies between Dr. Digel's assessment of Plaintiff's functional capacity (Tr. 354-355) and her underlying treatment notes (Tr. 347-403) as well as other evidence in the record, the ALJ rightly declined to afford her opinion controlling weight. Instead, the ALJ properly concluded that the medical record provides substantial evidence that Plaintiff suffered from, but was not disabled by, her combination of impairments.

Concerning Plaintiff's second assignment of error, the ALJ properly applied the standard for determining a claimant's Residual Functioning Capacity based on subjective complaints of pain. The record contains substantial evidence to support the ALJ's conclusion that Plaintiff's testimony was not fully credible. The determination of whether a person is disabled by non-exertional pain or other symptoms is a two-step process. "First, there must be objective medical evidence showing the existence of a medical impairment(s) which results from anatomical, physiological, or psychological abnormalities and which could reasonably be expected to produce the pain or other symptoms alleged." Craig v. Chater, 76 F.3d 585, 594 (4th Cir. 1996), citing 20 C.F.R. § 416.929(b); and § 404.1529(b); 42 U.S.C. § 423(d)(5)(A). If there is such evidence, then the ALJ must evaluate "the intensity and persistence of the claimant's pain, and the extent to which it affects [her] ability to work." Id. at 595, citing 20 C.F.R. § 416.929(c)(1); and § 404.1529(c)(1). The regulations provide that this evaluation must take into account:

13

> not only the claimant's statements about his or her pain, but also "all the available evidence," including the claimant's medical history, medical signs, and laboratory findings; any objective medical evidence of pain (such as evidence of reduced joint motion, muscle spasms, deteriorating tissues, redness, etc.); and any other evidence relevant to the severity of the impairment, such as evidence of the claimant's daily activities, specific descriptions of the pain, and any medical treatment taken to alleviate it.

Craig, 76 F.3d at 595 (citations omitted).

The record contains evidence of Plaintiff's chronic back pain due to degenerative disc disease at the L4-5 and L5-S1 levels with facet joint arthropathy, major depressive disorder, and anxiety– which <u>could</u> be expected to produce some of the pain claimed by Plaintiff – and thus the ALJ essentially found that Plaintiff could satisfy the first prong of the test articulated in Craig. However, the ALJ also correctly evaluated the "intensity and persistence of [her] pain, and the extent to which it affects [her] ability to work," and found Plaintiff's subjective description of her limitations not to be credible.

"The only fair manner to weigh a subjective complaint of pain is to examine how the pain affects the routine of life." Mickles v. Shalala, 29 F.3d 918, 921 (4th Cir. 1994), citing Hunter v. Sullivan, 993 F.2d 31 (4th Cir. 1992) (claimant's failure to fill prescription for painkiller, which itself was indicated for only mild pain, and failure to follow medical and physical therapy regimen, supported ALJ's inference that claimant's pain was not as severe as he asserted). In this case, the record before the ALJ clearly established an inconsistency between Plaintiff's claims of inability to work and her objective ability to work and to carry on with other moderate daily activities. In his decision, the ALJ recognized Plaintiff's ability to get her own groceries, drive locally, and play on the computer (Tr. 25). Plaintiff also testified that in 2000, she owned and operated a second-hand store but stopped after five months because she "didn't have enough customers" (Tr. 422).

14

Plaintiff's duties included "stocking shelves, cleaning, and waiting on customers" (Tr. 422).

Despite Plaintiff's contention at the hearing that she only ran the store for five months, her treatment notes from Alleghany Family Practice indicate that she was operating a second-hand store through 2005 (Tr. 251). In a July 20, 2005 treatment note, Plaintiff relayed to her physician that she was "under a lot of financial stress right now, as well, her second hand clothing store in State Road isn't doing well at all" (Tr. 251). Thus, the evidence suggests that Plaintiff was operating a store, and performing work-related functions, through her date last insured (Tr. 422). See Mickles, 29 F.3d at 921 (observing that "[t]he only fair manner to weigh a subjective complaint of pain is to examine how the pain affects the routine of life.")

In short, although the medical records establish that the Plaintiff experienced pain and mental and emotional difficulties to some extent, as the Fourth Circuit has noted, it is the ALJ's responsibility, not the Court's, "to reconcile inconsistencies in the medical evidence." Seacrist, 538 F.2d at 1056-57.

Simply put, "[w]here conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the Secretary (or the Secretary's designate, the ALJ)." Mickles, 29 F.3d at 923, citing Simmons v. Bowen, 834 F.2d 635, 640 (7th Cir. 1987). This is precisely such a case, as it contains substantial evidence to support the ALJ's treatment of the medical records and ultimate determination that Plaintiff was not disabled.

## IV. RECOMMENDATIONS

**FOR THE FOREGOING REASONS,** the undersigned respectfully recommends that Plaintiff's "Motion for Judgment on the Pleadings" (document #9) be **DENIED**; that Defendant's

"Motion for Summary Judgment" (document #10) be **GRANTED**; and that the Commissioner's determination be **AFFIRMED**.

## V. <u>NOTICE OF APPEAL RIGHTS</u>

The parties are hereby advised that, pursuant to 28 U.S.C. §636(b)(1)(c), written objections to the proposed findings of fact and conclusions of law and the recommendation contained in this Memorandum must be filed within ten (10) days after service of same.  <u>Page v. Lee</u>, 337 F.3d 411, 416 n.3 (4th Cir. 2003);  <u>Snyder v. Ridenour</u>, 889 F.2d 1363, 1365 (4th Cir. 1989); <u>United States v. Rice</u>, 741 F. Supp. 101, 102 (W.D.N.C. 1990).   Failure to file objections to this Memorandum with the District Court constitutes a waiver of the right to <u>de novo</u> review by the District Court.  <u>Diamond v. Colonial Life</u>, 416 F.3d 310, 315-16 (4th Cir. 2005);  <u>Wells v. Shriners Hosp.</u>, 109 F.3d 198, 201 (4th Cir. 1997); <u>Snyder</u>, 889 F.2d at 1365.   Moreover, failure to file timely objections will also preclude the parties from raising such objections on appeal.  <u>Diamond</u>, 416 F.3d at 316; <u>Wells</u>, 109 F.3d at 201; <u>Page</u>, 337 F.3d at 416 n.3; <u>Thomas v. Arn</u>, 474 U.S. 140, 147 (1985); <u>Wright v. Collins</u>, 766 F.2d 841, 845-46 (4th Cir. 1985); <u>United States v. Schronce</u>, 727 F.2d 91 (4th Cir. 1984).

The Clerk is directed to send copies of this Memorandum and Recommendation to counsel for the parties; <u>and to the Honorable Richard L. Voorhees</u>.

**SO RECOMMENDED AND ORDERED**.

Signed: August 18, 2009

David S. Cayer
United States Magistrate Judge