IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
CIVIL ACTION NO. 5:08-CV-138

| | |
|---|---|
| JACKIE R. MARTINEZ,<br>    Plaintiff,<br><br>v.<br><br>MICHAEL J. ASTRUE,<br>Commissioner,<br>Social Security Administration,<br>    Defendant. | )<br>)<br>)<br>)<br>)   **MEMORANDUM AND ORDER**<br>)<br>)<br>)<br>)<br>) |

**THIS MATTER** is before the Court on Plaintiff's "Motion for Judgment on the Pleadings" (Document #9), filed on June 2, 2009, and Defendant's "Motion for Summary Judgment" (Document #10), filed on August 4, 2009.

Pursuant to 28 U.S.C. § 636(b)(1)(B) and the standing order of designation, this Court referred the aforesaid motions to United States Magistrate Judge David Cayer for recommended disposition. In an opinion filed on August 18, 2009, the Magistrate Judge recommended that Plaintiff's motion be denied, that Defendant's motion be granted, and that the Commissioner's decision be affirmed. (Document #12.) On August 24, 2009, Plaintiff filed "Objections to the Report and Recommendation of the Magistrate Judge." (Document #13.) Plaintiff's objections are deemed to be timely, and the two specific objections raised by Plaintiff are considered herein.

## FACTUAL AND PROCEDURAL BACKGROUND

Neither party has objected to the Magistrate Judge's statement of the factual and procedural history of this case; thus, the Court adopts the facts as set forth in the "Memorandum and Recommendation." (Document #12, 1-15.)

## STANDARD OF REVIEW

The Federal Magistrate Act provides that "a district court shall make a *de novo* determination of those portions of the report or specific proposed findings or recommendations to which objection is made." 28 U.S.C. § 636 (b)(1) (2000); Camby v. Davis, 718 F.2d 198, 200 (4th Cir. 1983). On its face, however, the statute does not require review of any issues that are not the subject of an objection. Camby, 718 F.2d at 200; Thomas v. Arn, 474, U.S. 140, 149 (1985). Nevertheless, a district judge is responsible for the final determination and outcome of the case. Accordingly, the Court has carefully reviewed the remainder of the Magistrate Judge's "Memorandum and Recommendation" ("M&R"), in addition to conducting a *de novo* review of the issues specifically addressed in Plaintiff's objections.

The Social Security Act, 42 U.S.C. §§ 405(g) and 1383(c)(3), limits the Court's review of the Commissioner's decision to: (1) whether substantial evidence supports the Commissioner's decision, Richardson v. Perales, 402 U.S. 389, 390, 401 (1971), and (2) whether the Commissioner applied the correct legal standards. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson, 402 U.S. at 401 (citing Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). Ultimately, it is not the Court's responsibility "to determine the weight of the evidence, nor is it the court's function to substitute

its judgment for that of the [Commissioner] if [the] decision is supported by substantial evidence." Id. (concluding that it is the duty of the administrative law judge, and not the courts, to make findings of fact and to resolve conflicts in the evidence).

## DISCUSSION

In response to the Magistrate Judge's opinion, Plaintiff requests that the Court set aside the Memorandum and Recommendation and reverse or remand the Commissioner's decision denying Plaintiff's application for Social Security benefits. Her request is based upon two objections to the decision of the Administrative Law Judge ("ALJ"), which Plaintiff asserts were improperly addressed by the Magistrate Judge. Plaintiff first contends that the ALJ failed to follow the "treating physician rule" by not giving controlling weight to the opinion of Plaintiff's primary physician, Dr. Digel. (Document #9-3, 19; Document #13, 2.) And secondly, Plaintiff maintains that the ALJ improperly evaluated Plaintiff's credibility regarding her complaints of debilitating pain. (Document #9-3, 21; Document #13, 4.) The Court will now address both of these contentions separately.

**A. The Treating Physician Rule**

Plaintiff first objects to the ALJ's consideration of the final opinion of Dr. Mary Digel, Plaintiff's primary physician, which according to Plaintiff was entitled to controlling weight under the "treating physician rule." (Document #9-3, 19.) Relevant case law does indicate that where it is adequately supported, the opinion of a treating physician should be given significant weight because it reflects a judgment based on continuing observation over a long period of time. Campbell v. Bowen, 800 F.2d 1247, 1250 (4th Cir. 1986); Coffman v. Bowen, 829 F.2d 514, 517-18 (4th Cir. 1988). Nevertheless, "[a]lthough the treating physician rule generally

requires a court to accord greater weight to the testimony of a treating physician, the rule does not require that the testimony be given controlling weight." Mastro v. Apfel, 270 F.3d 171, 178 (4th Cir. 2001) (quoting Hunter v. Sullivan, 993 F.2d 31, 35 (4th Cir. 1992)). Furthermore, courts have repeatedly emphasized that the treating physician rule is not absolute. See e.g., Hines v. Barnhart, 453 F.3d 559, 563, n.2 (4th Cir. 2006) (noting that an ALJ may give the physician's testimony less weight under certain circumstances); Campbell, 800 F.2d at 1250 (holding that Fourth Circuit precedent clearly conveys that "such opinions may be rejected in particular cases").

While the rule applies in cases in which the opinion is not contradicted by other evidence, "if a physician's opinion is not supported by the clinical evidence or if it is inconsistent with other significant evidence, it should be accorded significantly less weight." Craig v. Chater, 76 F.3d 585, 590 (4th Cir. 1996) (citing 20 C.F.R. § 416.927 (1996)). The ALJ has the discretion to determine how to weigh the testimony of a treating physician in the face of persuasive contrary evidence. Mastro, 270 F.3d at 178; Hines, 453 F.3d at 563, n.2. Accordingly, due to the abundance of information contradicting Dr. Digel's conclusion in this case, this Court does not find error in the ALJ's rejection of it, or in the Magistrate Judge's recommendation to uphold the ALJ's decision.

As the Magistrate Judge set forth, substantial evidence from other physicians' records, and even Dr. Digel's previous notes, supports the ALJ's decision not to grant controlling weight to Dr. Digel's final opinion. An examination of the record shows that Plaintiff was initially treated by Dr. William R. Brown for back and leg pain. (Tr. 173-74.) At the time of her therapy, Dr. Brown's examination revealed that Plaintiff's strength, heel and toe walking, and toe

standing were "normal." (Tr. 145, 155.) As a supplement to the therapy, on July 18, 2003, Dr. Digel prescribed Duragesic patches to ease Plaintiff's continuing back pain. Plaintiff attested to the effectiveness of the patches on several occasions, stating that Duragesic did "a good job relieving her pain," and that her back pain was "adequately controlled with Duragesic." (Tr. 267.) On January 19, 2004, Dr. Digel assessed that Plaintiff's "chronic pain [was] fairly stable on Duragesic." (Tr. 264.)

In March and April of 2004, Plaintiff made consistent progress in her therapy, and she reported a "decline in pain overall" from 7/10 to 3/10 on a 0 to 10 scale. (Tr. 197.) One year later, Dr. Digel again noted that Plaintiff's back pain was "fairly well controlled." (Tr. 254.) Furthermore, an MRI performed by Dr. Joseph D. Lee on March 30, 2005 revealed "no acute fracture or misalignment," and only "[m]inimal narrowing [in] intervertebral disc space of L4-5 and L5-S1." (Tr. 209.) In a consultative physical examination conducted on the same day, Dr. John Kovacich observed that Plaintiff was capable of heel and toe walking, and that she had only "mild" limitation of active motion involving her thoracolumbar area. (Tr. 207.) After reviewing all of this evidence and determining Plaintiff's Residual Functional Capacity ("RFC"),[1] Dr. Camille Warren concluded on March 31, 2005 that Plaintiff remained capable of performing medium work.[2] (Tr. 235.) On August 24, 2005, Dr. Alan B. Cohen also reviewed the evidence

---

[1] RFC is a measurement of the most a claimant can do despite her limitations. See 20 C.F.R. § 404.1545(a). It is "an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis." Social Security Regulation (SSR) 96-8p.

[2] Medium work involves lifting no more than fifty pounds at a time with frequent lifting or carrying of objects weighing up to twenty-five pounds. If an individual can do medium work, he or she can also do sedentary and light work. 20 C.F.R. § 404.1567.

5

and completed a physical RFC assessment, ultimately affirming Dr. Warren's opinion that Plaintiff was capable of medium work. (Tr. 330-332.)

Taking into account all of this information, it is foreseeable that the ALJ would view Dr. Digel's subsequent opinion with a degree of skepticism. In a narrative summary of her findings on May 30, 2006, Dr. Digel opined that Plaintiff was limited to sitting four hours and standing/walking two hours in an eight-hour day with a sit-stand option. (Tr. 349.) In addition, she stated that she should avoid lifting anything in excess of ten pounds occasionally with no repetitive reaching or lifting, pushing, pulling, kneeling, bending, or stooping. (Tr. 349.) Although Plaintiff contends that this opinion should have been conclusive in her disability determination, (Document #9-3, 19) the ALJ was entitled to accord it significantly less weight given the bulk of the aforementioned evidence in the record which undermined Dr. Digel's findings. See Craig, 76 F.3d at 590.

In numerous decisions, including those cited by Plaintiff in her argument, courts in the Fourth Circuit have held that a treating physician's opinion is not dispositive, particularly where it is inconsistent with other substantive evidence. See e.g., Coffman, 829 F.2d at 517 (holding that "the opinion of a claimant's treating physician . . . may be disregarded only if there is persuasive contradictory evidence"); Campbell, 800 F.2d at 1250 (affirming that the treating physician's opinion was not controlling due to persuasive contrary analysis from another physician). In this matter, Dr. Digel's summary in May of 2006 was contrary to her previous notes, as well as the opinions of Dr. Kovacich, Dr. Warren, and Dr. Cohen. The ALJ held the discretion to give less weight to Dr. Digel's conclusion in light of this considerable contrary evidence. See Mastro, 270 F.3d at 178 (citing Hunter, 993 F.2d at 35); Craig, 76 F.3d at 590

(upholding the ALJ's rejection of the treating physician's opinion due to contrary medical evidence and the physician's own notes that contradicted his opinion).

Reviewing this issue *de novo*, the Court finds that substantial evidence in the record supports the Commissioner's decision and concludes that the Commissioner applied the proper legal standard. Consequently, Plaintiff's first objection is without merit.

### B. Evaluation of Plaintiff's Credibility

In Plaintiff's second objection, she contends that the ALJ failed to give her proper deference in evaluating her subjective complaints of pain. As Plaintiff notes, the Fourth Circuit has established a two-step process for determining the disabling effects of a claimant's pain or other symptoms. "First, there must be objective medical evidence showing the existence of a medical impairment(s) . . . which could reasonably be expected to produce the pain or other symptoms alleged." Craig, 76 F.3d at 594 (citing 20 C.F.R. § 416.929(b); and § 404.1529(b)). If an underlying impairment is shown, the ALJ must evaluate "the intensity and persistence of the claimant's pain, and the extent to which it affects [her] ability to work." Id. at 595 (citing 20 C.F.R. § 416.929(c)(1); and § 404.1529(c)(1). "Because pain is not readily susceptible of objective proof, however, *the absence* of objective medical evidence of the intensity, severity, degree or functional effect of pain is not determinative." Hines, 453 F.3d at 564-65 (emphasis added). Nonetheless, if objective evidence *is present*, it remains important in the second step, and "[a claimant's allegations] need not be accepted to the extent that they are inconsistent with the available evidence." Id. at 565, n.3 (quoting Craig, 76 F.3d at 595). Given the quantity of such information in this matter that contradicts Plaintiff's subjective complaints, the ALJ properly chose not to defer to Plaintiff in the second step of the evaluation.

7

Under the correct legal standard for evaluating the existence and intensity of Plaintiff's pain, the ALJ was required to consider the mass of objective evidence in the record.[3] This evidence includes "medical signs and laboratory findings," "any objective medical evidence of pain," and other relevant information, "such as evidence of the claimant's daily activities, specific descriptions of the pain, and any medical treatment taken to alleviate it." Craig, 76 F.3d at 595. Regarding medical evidence, as noted previously, both Dr. Warren and Dr. Cohen determined that Plaintiff remained capable of performing medium work. (Tr. 235; Tr. 330-32.) Likewise, Dr. Kovacich found that Plaintiff was capable of heel and toe walking and that she had only "mild" limitation of motion involving her thoracolumbar area. These three objective conclusions contradict Plaintiff's claim that she could only sit and walk for twenty minutes at a time. (Tr. 425-26.)

Moreover, Plaintiff's alleged inability to work is inconsistent with her own admissions as to her daily activities and the effectiveness of medication in alleviating her pain. The ALJ noted that Plaintiff testified to her ability to get her own groceries, drive locally, and play on the computer. (Tr. 25.) Additionally, a July 20, 2005 treatment note from Alleghany Family Practice indicates that Plaintiff was capable of much more significant activity. In the note, Plaintiff conveyed to her physician that she was "under a lot of financial stress right now, as well, her second hand clothing store in State Road isn't doing well at all." (Tr. 251.) And although Plaintiff asserts that "it is unclear if she was actually operating the store at that time"

---

[3] Plaintiff asserts that the ALJ's conclusion is flawed due to the lack of deference accorded Plaintiff's subjective complaints "at the second Hines step." (Document #9-3, 26.) However, as the Hines court noted in its explanation of the second step, Social Security Ruling (SSR) 96-7p dictates that "[i]f an individual's statements about pain or other symptoms are not substantiated by the objective medical evidence, the adjudicator must consider *all of the evidence in the case record*, including any statements by the individual." 453 F.3d at 565 (emphasis added).

(Document #13, 4), she does not dispute the obvious conclusion that she was performing work-related functions in July of 2005. Her ability to do so is not surprising given Plaintiff's aforementioned statements about the dramatic decrease in pain that she experienced with the Duragesic patches. Plaintiff admitted on multiple occasions that Duragesic did "a good job relieving her pain," and that her back pain was "adequately controlled with Duragesic" (Tr. 264), which led Dr. Digel to conclude that her pain did not interfere with her ability to "function at her normal activities of daily living" (Tr. 354). Particularly when considered with the record as a whole, this evidence provides substantial justification for the ALJ's decision not to simply defer to Plaintiff's subjective claim of disability. See Mickles v. Shalala, 29 F.3d 918, 921 (4th Cir. 1994) (holding that "[t]he only fair manner to weigh a subjective complaint of pain is to examine how the pain affects the routine of life"); see also Gross v. Heckler, 785 F.2d 1163, 1166 (4th Cir. 1986) (noting that "[i]f a symptom can be reasonably controlled by medication or treatment, it is not disabling").

Although the adjudicator may not disregard a claimant's subjective complaints of pain due to a lack of objective support, the ALJ is not required to simply accept the claimant's allegations in the face of an entire record containing contrary objective evidence. Hines, 453 F.3d at 565, n.3 (quoting Craig, 76 F.3d at 595). In this case, the overwhelming contradiction, even in Plaintiff's own admissions, does discredit Plaintiff's claim, and could reasonably have caused the ALJ to reject it. See Parris v. Heckler, 733 F.3d 324, 327 (4th Cir. 1984) (holding that "subjective evidence of pain cannot take precedence over objective medical evidence"). Accordingly, Plaintiff's assertion that the ALJ failed to properly evaluate her credibility is unavailing.

For the foregoing reasons, the Court finds that substantial evidence supports the Commissioner's decision, and that the Commissioner applied the correct legal standard in reviewing the record. Plaintiff's second objection is also without merit.

## CONCLUSION

Having conducted a *de novo* review of Plaintiff's specific objections, as well as a careful review of all other aspects of the recommendation, the Court concurs with the findings of fact and conclusions of law as set forth in the Magistrate Judge's "Memorandum and Recommendation" filed on August 18, 2009, and hereby incorporates those findings and conclusions to the extent that they are consistent with the findings of this Order. The Court hereby grants Defendant's Motion for Summary Judgment and denies Plaintiff's Motion for Judgment on the Pleadings. Accordingly, the Commissioner's decision denying benefits shall be <u>affirmed</u>.

**IT IS THEREFORE ORDERED** that Defendant's Motion for Summary Judgment is hereby **GRANTED** and Plaintiff's Motion for Judgment on the Pleadings is hereby **DENIED**.

Signed: August 31, 2010

Richard L. Voorhees
United States District Judge